## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

| | |
|---|---|
| BILLY KERR, individually and on behalf of all others similarly situated,<br><br>v.<br><br>K. ALLRED OILFIELD SERVICES, LLC d/b/a KAOS and KEITH ALLRED | **Case No. 1:20-cv-00477**<br>FLSA Collective Action<br>FED. R. CIV. P. 23 Class Action |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Billy Kerr brings this lawsuit to recover unpaid overtime wages and other damages from K. Allred Oilfield Services, LLC d/b/a KAOS ("Allred Oilfield") and Keith Allred under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*, and the New Mexico Minimum Wage Act (NMMWA), NMSA § 50-4-19, *et seq.*

2. Allred Oilfield Services and Allred are hereinafter referred to jointly as "Kaos."

3. Kerr and the other workers like him were typically scheduled for 12-hour shifts, 7 days a week, and their hitches routinely lasted for weeks at a time.

4. Kerr and those similarly situated often worked even more than that, but they were not paid overtime for hours worked in excess of 40 hours in a single workweek.

5. Instead of paying overtime as required by the FLSA and the NMMWA, Kaos improperly classified these workers as independent contractors and paid them a single day rate for all hours worked.

6. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers under the FLSA and the NMMWA.

## JURISDICTION AND VENUE

7. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

8. This Court has original jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d).

9. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events at issue occurred in this District and Division.

11. Kerr performed work for Kaos in this District and Division.

## PARTIES

12. Kerr worked for Kaos from May 2019 until November 2019.

13. During that time, Kerr worked exclusively for Kaos.

14. Kerr was an operator for Kaos.

15. Kerr was paid a day rate.

16. Kerr was not paid a salary.

17. Kerr was not paid on a fee basis.

18. Kerr was not paid by the hour.

19. Kaos classified Kerr as an independent contractor.

20. Kerr's written consent is attached as Exhibit A.

21. Kerr represents at least one class of similarly situated co-workers in this lawsuit.

22. Kerr represents a class of similarly situated workers under § 16(b) of the FLSA. *See* 29 U.S.C. § 216(b) (the "FLSA class"). This FLSA class is defined as:

> **Current and former workers employed by, or working on behalf of, Defendants as independent contractors in the United States in the past three years who were paid a day rate.**

23.     Kerr represents a class of similarly situated workers under the NMMWA, pursuant to Federal Rule of Civil Procedure 23 (the "NMMWA class"). This NMMWA class is defined as:

> **Current and former workers employed by, or working on behalf of, Defendants as independent contractors in New Mexico in the past three years who were paid a day rate.**

24.     Collectively, the FLSA Class Members and NMMWA Class Members are referred to as the "Putative Class Members."

25.     Allred Oilfield is a Texas limited liability company.

26.     Allred Oilfield conducts business in a systematic and continuous manner throughout New Mexico and this District.

27.     Allred Oilfield may be served by serving its registered agent for service of process: **Lemon Shearer Phillips & Good PC, 315 S. Main, Perryton, TX 79070**.

28.     Keith Allred is a natural person. He may be served by service upon him at **9266 Ben Tirran Ct., Colorado Springs, CO 80908-4793**, or wherever he may be found.

29.     At all relevant times, Allred was an owner of Allred Oilfield.

30.     At all relevant times, Allred was a manager of Allred Oilfield.

31.     At all relevant times, Allred was a member of Allred Oilfield.

32.     At all relevant times, Allred exerted operational control over Allred Oilfield.

33.     Allred Oilfield and Allred employed and/or jointly employed Kerr and the Putative Class Members.

34. Allred Oilfield and Allred are joint employers for purposes of the FLSA. *See* 29 C.F.R. § 791.2.

## COVERAGE UNDER THE FLSA

35. At all relevant times, Kaos has been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

36. At all relevant times, Kaos has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

37. At all relevant times, Kaos has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

38. Kaos treated Kerr as an employee and uniformly dictated the pay practices to which Kerr was subjected.

39. Kaos's misclassification of Kerr as an independent contractor does not alter his status as an employee for purposes of this FLSA action.

## FACTS

40. Kaos is an oilfield services company.

41. Koas was founded in 2010.

42. As of the time of filing this complaint, Kaos remains in operation.

43. Kaos provides are flowback, drilling, completion, and other support services.

44. To perform these services, Kaos employs flowback, drilling, completion, work over, and production operators.

45. Many of these individuals worked for Kaos performing the same or substantially similar job duties as Kerr and were misclassified by Kaos as so-called independent contractors in connection with Kaos's oilfield operations.

46. Kaos needs these workers to perform its oilfield support work.

47. For example, without flowback operators, Kaos could not provide flowback services.

48. Without drilling operators, Kaos could not provide drilling services.

49. Without completion operators, Kaos could not provide completion services.

50. While exact job titles and job duties may slightly differ, Kerr and the Putative Class Members were subjected to the same or similar illegal pay practices for similar work.

51. Specifically, Kaos classified the Putative Class Members as independent contractors and paid them the same daily rate for all hours worked, even those in excess of 40 hours in a workweek.

52. For example, Kerr worked exclusively for Kaos from May through November 2019.

53. Throughout his employment with Kaos, Kerr was classified as an independent contractor.

54. Kaos typically scheduled Kerr to work 12-hour shifts, for as many as 7 days per week.

55. Kerr frequently worked well in excess of 40 hours per week for Kaos.

56. In fact, Kerr frequently worked more than 84 hours per week for Kaos.

57. The work Kerr performed is an essential part of Kaos's core business.

58. During Kerr's employment with Kaos and while he was classified as an independent contractor, Kaos exercised control over all aspects of his job.

59. Kerr was not required to possess any unique or specialized skillset (other than that maintained by all other individuals working in his same job position) to perform his job duties.

60. During the time that Kerr worked with Kaos, he worked exclusively for Kaos.

61. Kaos controlled all the significant or meaningful aspects of the job duties performed by Kerr.

62. Kaos ordered the hours and locations Kerr worked, tools used, and rate of pay received.

63. Even though Kerr often worked away from Kaos's offices without the presence of a direct Kaos supervisor, Kaos still controlled all aspects of Kerr's job activities by enforcing mandatory compliance with Kaos and/or its client's policies and procedures.

64. No real investment was required of Kerr to perform his job.

65. Kaos determined Kerr's opportunity for profit and loss.

66. Kerr did not provide the equipment he worked with on a daily basis. Kaos made the large capital investments in buildings, machines, equipment, tools, and supplies in the business in which Kerr works.

67. Kerr did not incur operating expenses like rent, payroll, marketing, and insurance.

68. Kerr was economically dependent on Kaos during his employment.

- 7 -

69. Kaos set Kerr's rate of pay and his work schedule and prohibited him from working other jobs for other companies while working on jobs for Kaos.

70. Kaos directly determined Kerr's opportunity for profit and loss, as Kerr's earning opportunity was based on the amount of time Kaos scheduled him to work.

71. Very little skill, training, or initiative was required of Kerr to perform his job duties.

72. Indeed, the daily and weekly activities of Kerr and the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by Kaos and/or its clients.

73. Virtually every job function of the Putative Class Members was pre-determined by Kaos and/or its clients, including the tools to use at a job site, the schedule of work, and related work duties.

74. Kerr and the Putative Class Members were prohibited from varying their job duties outside pre-determined parameters.

75. Moreover, the job functions of Kerr and the Putative Class Members were primarily manual labor/technical in nature, requiring little to no official training, much less a college education or other advanced degree.

76. For the purposes of an unpaid overtime claim, Kerr and the Putative Class Members performed substantially similar job duties related to servicing oil and gas operations in the field.

77. Kerr performed routine manual and technical labor duties that were largely dictated by Kaos and/or its clients.

78. Kerr was not employed by Kaos on a project-by-project basis.

79. While Kerr was classified as an independent contractor, he was regularly on call by Kaos and/or its clients and was expected to drop everything and work whenever needed.

80. All the Putative Class Members performed the same or similar job duties and were subjected to the same or similar policies and procedures by which Kaos dictated the day-to-day activities performed by each person. The Putative Class Members also worked similar hours as Kerr and were denied overtime pay as a result of the same illegal pay practice.

81. Kerr and the Putative Class Members all worked in excess of 40 hours each week and were often scheduled for 12-hour shifts for days or weeks at a time.

82. Instead of paying them overtime, Kaos paid Kerr and the Putative Class Members a day-rate.

83. Kaos denied Kerr and the Putative Class Members any overtime premium for any hours worked in excess of 40 hours in a single workweek.

84. Kerr and the Putative Class Members maintained and worked with oilfield machinery, performed manual labor, and worked long hours in the field.

85. Because Kerr and the Putative Class Members were misclassified as independent contractors by Kaos, they should receive overtime for all hours they worked in excess of 40 hours in each workweek.

86. Kaos's policy of failing to pay overtime to its operators, including Kerr, violated the FLSA and the NMMWA because these workers were, for all purposes, employees performing non-exempt job duties.

87. Kaos's day-rate system violated the FLSA and the NMMWA because Kerr and the Putative Class Members did not receive any overtime premium pay for hours worked over 40 hours each workweek.

### CLASS AND COLLECTIVE ACTION ALLEGATIONS

88. Kerr incorporates all preceding paragraphs.

89. The illegal pay practices Kaos imposed on Kerr were likewise imposed on the Putative Class Members.

90. Numerous other individuals who worked with Kerr were improperly classified as exempt, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by the FLSA and the NMMWA.

91. The classes are so numerous that joiner of all members is impracticable.

92. Thus, Kaos imposed a uniform practice or policy on Kerr and the Putative Class Members regardless of any individualized factors.

93. Based on his experiences and tenure with Kaos, Kerr is aware that Kaos's illegal practices were imposed on the Putative Class Members.

94. Putative Class Members were all improperly classified as independent contractors and not paid overtime when they worked in excess of 40 hours per week.

95. Kaos's failure to pay wages and overtime compensation at the rates required by the FLSA and the NMMWA result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

96. Kerr's experiences are therefore typical of the experiences of the Putative Class Members.

97. Kerr has no interest contrary to, or in conflict with, the Putative Class Members. Like each member of the proposed classes, Kerr has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

98. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

99. Absent this action, many Putative Class Members likely will not obtain redress of their injuries and Kaos will reap the unjust benefits of violating the FLSA and the NMMWA.

100. Furthermore, even if some of the Putative Class Members could afford individual litigation against Kaos, it would be unduly burdensome to the judicial system.

101. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

102. The questions of law and fact common to each of the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

  (a) Whether the Putative Class Members were improperly classified as independent contractors;

  (b) Whether the Putative Class Members were not paid overtime at 1.5 times their regular rate of pay for hours worked in excess of 40 in a workweek;

  (c) Whether Kaos's day rate pay scheme, without overtime pay regardless of the number of hours worked, violated the FLSA and the NMMWA;

  (d) Whether Kaos's decision to not pay overtime to the Putative Class Members was made in good faith or on reasonable grounds; and

  (e) Whether Kaos's violation of the FLSA and the NMMWA was willful.

103. Kerr's claims are typical of the Putative Class Members claims. Kerr and the Putative Class Members Class Members have sustained damages arising out of Kaos's illegal and uniform employment policy.

104. Kerr knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

105. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

### FIRST CAUSE OF ACTION—VIOLATIONS OF THE FLSA

106. Kerr incorporates all other allegations.

107. As set forth herein, Kaos violated the FLSA by failing to pay Kaos and the FLSA Class Members overtime under its day-rate system for hours worked in excess of 40 in a workweek. 29 U.S.C. § 207(a).

108. Kaos knowingly, willfully, or with reckless disregard carried out this illegal pattern or practice of failing to pay Kerr and the FLSA Class Members proper overtime compensation.

109. Kaos's failure to pay overtime compensation to Kerr and the FLSA Class Members was neither reasonable, nor was the decision not to pay overtime made in good faith.

110. Accordingly, Kerr and the FLSA Class Members are entitled to overtime wages in an amount equal to 1.5 times their regular rates of pay, plus liquidated damages or double damages, attorney's fees, and costs. 29 U.S.C. § 216(b).

### SECOND CAUSE OF ACTION—VIOLATIONS OF NMMWA

111. Kerr incorporates all other allegations.

112. The conduct alleged in this Complaint violates the NMMWA.

113. Kaos was and is an "employer" within the meaning of the NMMWA.

114. At all relevant times, KOAS employed Kerr and each other NMMWA Class Member as an "employee" within the meaning of the NMMWA.

115. The NMMWA requires an employer like Kaos to pay overtime to all non-exempt employees.

116. Kerr and the other NMMWA Class Members are non-exempt employees who are entitled to be paid overtime for all overtime hours worked.

117. Within the applicable limitations period, Kaos had a policy and practice of failing to pay proper overtime to the NMMWA Class Members for their hours worked in excess of 40 hours per week.

118. As a result of Kaos's failure to pay proper overtime to Kerr and the NMMWA Class Members for work performed in excess of 40 hours in a workweek, Defendants violated the NMMWA.

119. Kerr and the NMMWA Class Members are entitled to overtime wages under the NMMWA in an amount equal to 1.5 times their rates of pay, plus treble damages, attorney's fees, and costs. NMSA § 50-4-26.

120. Since before Kerr began working for Kaos until at least after he left, Kaos subjected Kerr and the NMMWA class members to the illegal pay scheme at issue.

121. The illegal pay scheme was Kaos's continual practice of paying class members through at least 2019.

122. The illegal pay practices at issue were thus part of a continuing course of conduct.

123. Kaos's continuing course of conduct regarding the pay practice at issue entitles Kerr and the NMMWA Class Members to recover for all such violations, regardless of the date they occurred. NMSA § 50-4-32.

**RELIEF SOUGHT**

124. Wherefore, Kerr prays for judgment against Kaos as follows:

   (a)   For an order finding each person or entity comprising Kaos to be a joint employer pursuant to the FLSA and NMMWA;

   (b)   For an order certifying this case as a collective action pursuant to 29 U.S.C. §216(b) for the purposes of the FLSA claims;

   (c)   For an order certifying Kerr's claims under the NMMWA as a Rule 23 class action, appointing Kerr as a class representative, and his counsel as class counsel;

   (d)   For an order finding Kaos liable for violations of the FLSA with respect to Kerr and all FLSA Class Members covered by this case;

   (e)   For an order finding Kaos liable for violations of the NMMWA with respect to Kerr and all NMMWA Class Members covered by this case;

   (f)   For a judgment awarding all unpaid wages and liquidated damages to Kerr and all Putative Class Members covered by this case;

   (g)   For an order awarding treble damages to Kerr and all NMMWA Class Members covered by this case;

   (h)   For a judgment awarding Kerr and all Putative Class Members covered by this case their attorneys' fees, costs, and expenses of this action;

   (i)   For a judgment awarding Kerr and all Putative Class Members covered by this case pre- and post-judgment interest at the highest rates allowed by law; and

   (j)   For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Matthew S. Parmet*
      **Matthew S. Parmet**
      D.N.M. Id. # 16-155
**PARMET PC**
3 Riverway, Ste. 1910
Houston, TX 77056
phone  713 999 5228
fax      713 999 1187
matt@parmet.law

**Edmond S. Moreland, Jr.**
D.N.M. Id. # 18-214
**MORELAND VERRETT, P.C.**
700 West Summit Dr.
Wimberley, TX 78676
phone  512 782 0567
fax      512 782 0605
edmond@morelandlaw.com

**Attorneys for Plaintiff**